UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CINCINNATI INSURANCE COMPANY,

        Plaintiff / Counter-Defendant

File No. 2:06-CV-205

v.

HON. ROBERT HOLMES BELL

PETER HARDING,

        Defendant,

KENNETH J. BEHRENDT,

        Defendant / Counter-Claimant.
_____/

## **O P I N I O N**

      This matter is before the Court on Plaintiff Cincinnati Insurance Company's motion for summary judgment as to whether Defendant Peter Harding's homeowner's insurance policy with Plaintiff provides insurance coverage for any liability Defendant Harding may have in the civil action Defendant Kenneth J. Behrendt brought against Defendant Harding in Wisconsin state court.[1] (Docket # 22.) Plaintiff contends that there is no coverage based

---

[1] The matter before the Court may affect the Wisconsin state court action; however, no party has sought to have the Court abstain under *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942). *See also Grand T. W. R.R. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (setting forth the five factors a district court is to consider in determining whether a declaratory judgment is proper). The parties are aware of this issue as it is referenced in Defendant Harding's answer to the complaint and in the December 14, 2006, joint status report. (Docket # 5, Def. Harding's Ans. ¶ 5; Docket # 15, Dec. 14, 2006 Joint Status Report ¶ 10(b).) As the parties are aware of this issue, but have not filed a motion, the Court declines to raise the issue *sua sponte*.

on the application of either the "business" or professional services exclusion. Defendants contend that neither exclusion is applicable. For the reasons that follow, as a matter of law, the "business" exclusion is applicable.

## I.

On January 22, 2004, Plaintiff renewed a homeowner's insurance policy that provided coverage to Defendant Harding for his home at 1869 Range Line Road, Menominee, Michigan. Plaintiff issued Policy No. HR 9952041 ("the Policy"), effective January 31, 2004, and expiring January 31, 2005.

Defendant Harding is employed by WDM Enterprises. (Docket # 22, Pl.'s Br. in Supp., Ex. 4, Harding Dep. 5:14-15.) He is a certified pipe welder. (*Id.* at 5:13-25.)

In the late spring or early summer of 1993, Defendant Harding did some work on a waste oil storage tank at Dan's Faster Lube, Marinette, Wisconsin. Dan's Faster Lube is owned by Dan Linczeski. Defendant Harding has known Mr. Linczeski for over fifteen years. At some point in 1993 Defendant Harding stopped by Dan's Faster Lube and Mr. Linczeski asked him about working on a waste oil storage tank. Mr. Linczeski had previously obtained the tank that was to be used for the project. (*Id.* at 10:17-24.) Defendant Harding put pipe plugs into preexisting holes in the tank and piped in two valves. (*Id.* at 12:1-7.) In addition, he welded onto the tank four wheels, two handles, and bolts from which tools could be hung. (*Id.* at 12:3-17.) He performed some of the work on the tank at Dan's Faster Lube and the remainder was performed in the parking lot of WDM Enterprises. (*Id.* at 15:6-15.) Defendant Harding did the work on the tank as "a favor" and he did not bill

2

Mr. Linczeski for any of his labor.  (*Id.* at 16:3-5; Docket #23, Def. Harding's Br. in Opp'n, Ex. 2, Harding Aff. ¶ 5.)  At some point, however,  Mr. Linczeski gave Defendant Harding a check for about $50.00. (Harding Dep. 96:20-97:21.)  Defendant Harding also testified that WDM Enterprises did not bill Mr. Linczeski for Defendant Harding's labor.  (*Id.* at 45:25-46:11.)  Defendant Harding's testimony varied as to whether Mr. Linczeski was billed for the parts, with Defendant Harding testifying that Mr. Linczeski was billed for none, some, or all of the parts and supplies.  (*Id.* at 16:6-13, 37:12-38:5, 45:25-46:6, 84:13-20, 86:5-87:11, 113:23-114:15.)

Approximately a month later Mr. Linczeski told Defendant Harding that the waste oil storage tank did not have enough capacity.  (*Id.* at 18:16-19.)  In order to resolve the capacity problem Mr. Linczeski sought Defendant Harding's assistance in installing a system to move oil from the waste oil storage tank to four tanks in the backroom of Dan's Faster Lube.  (*Id.* at 18:20-24.)  Defendant Harding then assisted in the installation of the piping necessary to move oil to the four tanks in the backroom.[2]  (*Id.* at 22:20-24:24.)  Mr. Linczeski decided to use a pressurized system to move the oil from the waste oil storage tank to the four tanks in the backroom.  (*Id.* at 24:16-29:25.)

On June 15, 2004, Defendant Behrendt was injured in the course of his employment with Dan's Faster Lube.  Defendant Behrendt was injured when the waste oil storage tank exploded.  On October 31, 2005, Defendant Behrendt filed a lawsuit in Marinette County

---

[2]The Court will refer to the waste oil storage tank, the four tanks in the backroom, and the connecting pipe, collectively as the waste oil storage system.

Circuit Court in Wisconsin ("the Behrendt Civil Action"). Defendant Behrendt listed nine defendants, including Peter Harding and the Cincinnati Insurance Company. In the Behrendt Civil Action, Defendant Behrendt alleges that Defendant Harding was negligent in his work on the waste oil storage system. (Pl.'s Br. in Supp., Ex. 1, Behrendt Compl. ¶ 28.) Plaintiff has been defending Defendant Harding in the Behrendt Civil Action under a reservation of rights letter. (Pl.'s Br. in Supp., Ex. 3, Jan. 23, 2006 Letter from Ernie Gustafson 2-3.) Plaintiff filed this declaratory judgment action on August 1, 2006.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of the

plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the plaintiffs. *Id.*; *see generally*, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

When the moving party has the burden of proof, however, a somewhat different standard applies. "'[W]here the moving party has the burden – the plaintiff on a claim for relief or defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). "[I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (quoting 11 James Wm. Moore, et al., *Moore's Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)). Thus, "[s]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III.

"Interpretation of an insurance policy ultimately requires a two-step inquiry: first, a determination of coverage according to the general insurance agreement and, second, a decision regarding whether an exclusion applies to negate coverage." *Auto-Owners Ins. Co. v. Harrington*, 455 Mich. 377, 382, 565 N.W.2d 839 (1997). Plaintiff does not dispute that there is coverage according to the general insurance agreement; rather, Plaintiff contends that two exclusions are applicable. Therefore, the question before the Court is limited to the second step of the inquiry – whether an exclusion applies to negate coverage. Plaintiff contends that coverage is excluded by both the "business" and professional services exclusions.

The interpretation of an insurance policy is a question of law. *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 47, 664 N.W.2d 776 (2003). Michigan considers an insurance policy to be a contract, subject to the general rules of interpretation that apply to all other contracts, not a special set of rules unique to insurance policies. *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 461, 703 N.W.2d 23 (2005). "'The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate.'" *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 197, 702 N.W.2d 106 (2005) (quoting *McIntosh v. Groomes*, 227 Mich. 215, 218, 198 N.W. 954 (1924)). The language of the parties "is the best way to determine what the parties intended." *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 476, 663 N.W.2d 447 (2003).

If an insurer asserts that a claim is within an exclusion to the policy, then the burden is on the insurer to prove that the exclusion to coverage is applicable. *Heniser v. Frankenmuth Mut. Ins.*, 449 Mich. 155, 161 n.6, 534 N.W.2d 502 (1995); *Morrill v. Gallagher*, 370 Mich. 578, 587, 122 N.W.2d 687 (1963). Exclusions from coverage, when ambiguous, are construed against the insurance company and in favor of coverage. *Wilkie*, 469 Mich. at 50-51; *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567, 489 N.W.2d 431 (1992). The question of whether an insurance contract is ambiguous is a question of law. *Wilkie*, 469 Mich. at 47.

**A. "Business" exclusion**

Section II.A.2 provides:

> A. Coverage E - Bodily Injury, Personal Injury and Property Damage Liability and Coverage F - Medical Payments to Others do not apply to "bodily injury", "personal injury" or "property damage":
> . . .
> 2. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

(Pl.'s Br. in Supp., Ex. 2, Homeowner Policy, Form HO-3, at 15.) The Policy defines "business" as:

> "Business" includes but is not limited to any trade, profession, or occupation of any kind including farming. Farming includes the growing or raising of produce, livestock or poultry for sale. Newspaper delivery, baby-sitting, caddying, lawn care and similar incidental "business" activities by a minor resident of your household are not considered "business".

(*Id.* at 1.)

7

"Trade" is defined as "an occupation requiring manual or mechanical skill." *Webster's New Collegiate Dictionary* 1228 (1979).[3] Defendant Harding's work as a pipe welder is unquestionably an occupation requiring mechanical skill, and thus is a trade under the Policy. As Defendant Harding's work as a pipe welder is a trade under the Policy, Defendant Harding's work as a pipe welder meets the definition of "business" in the Policy.

The Court must next inquire whether the complained-of activity, the work that Defendant Harding did on the waste oil storage system, arose out of or was in connection with Defendant's work as a pipe welder. The language of the exclusion does not require that the insured profited from the complained-of activity. Moreover, Michigan courts have held that exclusions with materially similar language were applicable even if the insured did not profit from the complained-of activity. *State Mut. Ins. Co. v. Russell*, 185 Mich. App. 521, 530, 462 N.W.2d 785 (1990) ("[A]ll that is required to trigger the exclusion is that the acts be performed as part of the business or service normally performed by the insured for profit . . . ." (citing *Frankenmuth Mut. Ins. Co. v Kompus*, 135 Mich. App. 667, 676-77, 354 N.W.2d 303 (1984))); *Greenman v. Mich. Mut. Ins. Co.*, 173 Mich. App. 88, 94, 433 N.W.2d 346 (1988) ("The complained-of acts themselves need not be performed for profit; the acts need only be performed during the business pursuit of the insured." (citing *Kompus*)). As an employee of WDM Enterprises Defendant Harding normally performed pipe welding for

---

[3]Under Michigan law, "courts are to 'interpret [undefined] terms of an insurance contract in accordance with their commonly used meaning.'" *City of Grosse Pointe Park*, 473 Mich. at 215 n.17 (quoting *Frankenmuth Mut. Ins. Co. v Masters*, 460 Mich. 105, 112 595 N.W.2d 832 (1999)) (modification in *City of Grosse Pointe Park*).

profit, so whether he was paid by Mr. Liczeski is not material to the application of the "business" exclusion. As a matter of law, the "business" exclusion applies regardless of whether Mr. Liczeski paid Defendant Harding for the work that he did on the waste oil storage system.

Defendant Behrendt contends that the "business" exclusion is inapplicable because Defendant Harding did not perform the work on the waste oil storage system as an employee of WDM Enterprises. Defendant Behrendt's contention is premised on the idea that because Defendant Harding is not self-employed, he can only engage in business as an employee of WDM Enterprises. Defendant Behrendt notes that Plaintiff, Cincinnati Insurance, is also the insurer for WDM Enterprises and that Cincinnati Insurance successfully moved in the Behrendt Civil Action to have WDM Enterprises dismissed because Defendant Harding was not acting as an employee of WDM Enterprises when he worked on the waste oil storage system. (Docket # 25, Vopal Aff., Ex. C, WDM Enterprises' Mot. for Summ. J. in Behrendt Civil Action; Vopal Aff., Ex. E, Aug. 4, 2006 Order in Behrendt Civil Action.) Defendant Behrendt supports this contention with reference to the unpublished decision of the Michigan Court of Appeals in *Citizens Insurance Co. of America v. Sredzinski*, No. 208746, 1999 WL 33453319, 1999 Mich. App. LEXIS 1375 (Mich. Ct. App. Mar. 26, 1999). In *Sredzinski* there was a "business" exclusion in the insured's homeowner's policy and the complained-of activity was not done for profit, though the insured did regularly profit from activity of the same type as the complained-of activity. The Court of Appeals held that the "business" exclusion did not apply; however, the court in *Sredzinski* did not cite *Russell*, *Greenman*, or

9

*Kompus*. As a result the *Sredzinkski* decision does not provide any analysis distinguishing the prior published decisions of the Court of Appeals holding that "business" exclusions can be triggered when the complained-of acts themselves were not performed for profit. In the absence of such analysis the Court declines to follow *Sredzinski*.

The Michigan courts have developed a framework for analyzing business pursuits exclusions, which are materially similar to the "business" exclusion at issue.

> "To constitute a business pursuit, there must be two elements: first, continuity, and secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements."

*State Mut. Cyclone Ins. Co. v. Abbott*, 52 Mich. App. 103, 107, 216 N.W.2d 606 (1974) (quoting *Fadden v. Cambridge Mut. Fire Ins. Co.*, 274 N.Y.S.2d 235, 241 (N.Y. Sup. Ct. 1966)).

Defendant Harding's stated occupation was pipe welding. (Harding Dep. 5:13-25.) There has been no contention that the work Defendant Harding did on the waste oil storage system was not pipe welding. Defendant Behrendt nevertheless contends that the continuity requirement is not met based on *Randolph v. Ackerson*, 108 Mich. App. 746, 310 N.W.2d 865 (1981). In *Randolph* the defendant had "purchased from his neighbor a barn which he razed, moved to his property and advertised for sale." *Id.* at 747. The plaintiff had responded to the advertisement and was injured while he and the defendant were loading some of the barn wood into the plaintiff's pickup truck. *Id.* "The defendant was a full-time employee at Lansing Motor Wheel Corporation and additionally conducted a sizeable

farming operation." *Id.* at 749. The Michigan Court of Appeals affirmed the trial court's conclusion that the defendant's activity was not continuous because "there was no evidence presented that [the] defendant had ever engaged in the business of razing old barns for profit prior to the occasion at issue or that he had done so since." *Id.* at 748-49. *Randolph* is distinguishable because both before and since his work on the waste oil storage system Defendant Harding did work as a pipe welder. Thus, the continuity component of the business pursuits framework is met.

With the first part of the business pursuits framework met, the second part of the framework asks whether Defendant Harding's pipe welding work on the waste oil storage system was "'a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements.'" *Abbott*, 52 Mich. App. at 107 (quoting *Fadden*, 274 N.Y.S.2d at 241). Defendant Harding was employed as a pipe welder by WDM Enterprises. (Harding Dep. 5:14-15.) Defendant Harding testified that he was not paid for his work on the waste oil storage system, but he did acknowledge receiving a $50.00 check from Mr. Linczeski. (Harding Dep. 16:3-5, 45:25-46:11, 96:20-97:21.) Thus, there is a question of fact as to whether Defendant Harding was paid for his work on the waste oil storage system. That question of fact, however, is not determinative of whether the second part of the business pursuits framework is met. In *Kompus* the Michigan Court of Appeals in analyzing the application of the second part of business pursuits framework explained that:

> We are unwilling to say that the profit requirement of the business pursuits test may be satisfied only if the individual complained-of acts were themselves

11

    specifically performed for profit on an act-by-act basis. The test is not so narrow. We interpret it instead to require that the acts be performed as part of the business or service normally performed by the insured for profit, i.e., the business pursuit of the insured . . . .

*Kompus*, 135 Mich. App. at 677. *Accord Russell*, 185 Mich. App. at 530; *Greenman*, 173 Mich. App. at 94. Contrary to Defendant Behrendt's contentions, while still applying the framework originally set-forth in *Abbott*, the Court of Appeals in *Kompus* made clear that the second part of the business pursuits framework can be met even if the complained-of acts were not for profit. Defendant Harding normally performs pipe welding for profit as part of his employment with WDM Enterprises and the work he performed on the waste oil storage system was pipe welding, therefore the second part of the business pursuits framework is met.

    Defendant Behrendt makes one further argument that the second part of the business pursuits framework is not met by directing the Court to three cases, *Morrill*; *Wright v. White Birch Park, Inc.*, 118 Mich. App. 639, 325 N.W.2d 524 (1982); and *Michigan Mutual Liability Co. v. Ferguson*, 15 Mich. App. 298, 166 N.W.2d 525 (1968), in which Defendant Behrendt contends that it was held that the complained-of activity was not for profit and so the second part of the business pursuits framework was not met. These cases are distinguishable for two reasons. First, these cases are distinguishable because they did not address whether the complained-of activity was for profit. *See Kompus*, 135 Mich. App. at 675 (discussing *Morrill* and *Ferguson*). Second, these cases are distinguishable because in each of these cases the complained-of activity was materially different than the customary engagement or stated occupation of the insured. *Morrill*, 370 Mich. at 581-82, 587-88

12

(complained-of activity was the throwing of a firecracker, but insured's stated occupation was general manager and sole stockholder of the company that employed the plaintiff); *Wright*, 188 Mich. App. at 644-45 (complained-of activity was a fist fight, but insured's stated occupation involved setting up trailers); *Ferguson*, 15 Mich. App. 300-01 (complained-of activity was the throwing of a shovel handle off the roof, but insured was a business owner who had been cleaning snow off the roof of his building). In the matter before the Court the complained of activity – pipe welding – was the same as the insured's stated occupation – pipe welding. As a matter of law, coverage is excluded by the "business" exclusion if it is analyzed as a business pursuits exclusion under Michigan law.

No reasonable trier of fact could find other than that the "business" exclusion negates coverage under the Policy for any liability Defendant Harding may have in the Behrendt Civil Action.

**B. Professional services exclusion**

Section II.A.4 provides:

A. Coverage E - Bodily Injury, Personal Injury and Property Damage Liability and Coverage F - Medical Payments to Others do not apply to "bodily injury", "personal injury" or "property damage":
. . .
4. Arising out of a rendering or failing to render professional services[.]

(Homeowner Policy, Form HO-3, at 16.) The Policy does not define "professional services" and the Michigan courts have not defined "professional services" in a homeowner's policy or other similar context. *Cf. St. Paul Fire & Marine Ins. Co. v. Quintana*, 165 Mich. App. 719, 722-24, 419 N.W.2d 60 (1988) (discussing the definition of "professional services" in

13

a professional liability insurance policy and holding that a sexual assault was not within the definition). "Professional services" has most often been defined by courts as "'[a] 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor or skill, and the labor or skill is predominately mental or intellectual, rather than physical or manual.'" 23 David H. Topol, *Appleman on Insurance Law and Practice* § 146.1 (2d ed. 2007) (quoting *Marx v. Hartford Accident & Indem. Co.*, 157 N.W.2d 870, 871-72 (Neb. 1968)). This definition is consistent with the definition of "professional services" under the Michigan Professional Service Corporation Act. *See* M.C.L. § 450.222(c).[4]

Defendant Harding's work as a pipe welder requires specialized knowledge, labor, and skill; however, the labor and skill is predominantly physical or manual. As a result the professional services exclusion does not apply to Defendant Harding's work as a pipe welder. Plaintiff has not shown that no reasonable trier of fact could find other than that the professional services exclusion negates coverage under the Policy for any liability Defendant Harding may have in the Behrendt Civil Action.

**IV.**

---

[4]M.C.L. § 450.222(c) provides:
"Professional service" means a type of personal service to the public that requires as a condition precedent to the rendering of the service the obtaining of a license or other legal authorization. Professional service includes, but is not limited to, services rendered by certified or other public accountants, chiropractors, dentists, optometrists, veterinarians, osteopaths, physicians and surgeons, doctors of medicine, doctors of dentistry, podiatrists, chiropodists, architects, professional engineers, land surveyors, and attorneys at law.
M.C.L. § 450.222.

As a matter of law, the "business" exclusion negates coverage under the Policy for any liability Defendant Harding may have in the Behrendt Civil Action.  The negation of coverage by the "business" exclusion entitles Plaintiff to summary judgment in this declaratory judgment action.  Defendant Behrendt filed a counter-claim against Plaintiff asserting that the Policy provides coverage for any liability Defendant Harding may have in the Behrendt Civil Action.  The Court's decision on Plaintiff's summary judgment motion also resolves Defendant Behrendt's counter-claim, because both Plaintiff's declaratory judgment action and Defendant Behrendt's counter-claim involve a determination of whether the Policy provides coverage for any liability Defendant Harding may have in the Behrendt Civil Action.  A judgment will be entered consistent with this opinion.


Date:    October 24, 2007            /s/ Robert Holmes Bell
                                     ROBERT HOLMES BELL
                                     CHIEF UNITED STATES DISTRICT JUDGE